UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HILCO DILIGENCE SERVICES, LLC, and HILCO VALUATION SERVICES, LLC,
    Plaintiff

v.

SIKICH, LLC,
    Defendant

No. 25 CV 1002

Judge Jeremy C. Daniel

**MEMORANDUM OPINION AND ORDER**

The defendant's motion to dismiss [16] is granted as to Count IV. The motion is denied in all other respects. The defendant's motion for *in camera* review of documents [22] is denied as moot. The plaintiff's request for leave to amend is granted. The plaintiff shall file any amendment with respect to Count IV by June 3, 2025, and the defendant shall answer the operative complaint on or before June 24, 2025.

**BACKGROUND**

The plaintiffs, Hilco Diligence Services, LLC, and Hilco Valuation Services, LLC ("Hilco"), provide financial and accounting diligence services and asset appraisals for commercial lenders. (R. 1 ¶¶ 2, 14–15.)[1] According to Hilco, two of its former employees, Mark Stevens and Michael Baiocchi, left Hilco and went to work for the defendant, Sikich, LLC, one of Hilco's competitors. (*Id.* ¶¶ 1–3.) Stevens, an

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

Executive Director at Hilco, left in June 2023, joining Sikich the next month as Director of Transaction Advisory Lending Services. (*Id.* ¶¶ 47–48.), Baiocchi left Hilco to join Sikich in October 2024. (*Id.* ¶¶ 53–54, 56–57, 59–60.) Hilco alleges that Stevens and Baiocchi both accepted positions with Sikich in violation of the non-competition provisions in their respective employment agreements with Hilco. (*Id.* ¶¶ 3, 34–35, 44–45, 50.)

To secure trade secret information, Hilco requires its employees "to sign agreements that include provisions relating to non-disclosure/nonuse/non-transfer of its Confidential and Trade Secret Information during employment and thereafter," reviews employee's devices and accounts containing such information, and limits access to its databases, among other things. (*Id.* ¶¶ 25–26.) According to Hilco, prior to his departure, Baiocchi sent Hilco's trade secret information to Sikich employees via email and text message and emailed other trade secret information to his personal email account. (*Id.* ¶¶ 62–75.) This trade secret information included Hilco's workbooks, field exam reports, engagement letters, testing trackers, field exam outlines, an information request list, a contact list, a cash management overview, and project lists, among other things. (*Id.* ¶ 76.)

Hilco filed the present action claiming Sikich misappropriated Hilco's trade secrets in violation of the Defend Trade Secrets Act ("DTSA") (Count I) and the Illinois Trade Secrets Act ("ITSA") (Count II), and that Sikich tortiously interfered with Hilco's non-competition agreements with Baiocchi (Count III) and Stevens

2

(Count IV). (*Id.* ¶¶ 28–32.) Sikich now moves to dismiss the complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6).[2] (R. 16.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, not the merits of the allegations. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). "To defeat a [Rule 12(b)(6)] motion to dismiss, a plaintiff must 'state a claim to relief that is plausible on its face.'" *Sabo v. Erickson*, 128 F.4th 836, 842 (7th Cir. 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "When examining a motion to dismiss, [the Court] accept[s] as true all well-pleaded facts in the complaint and draw[s] reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022). However, "[t]hreadbare recitals of the elements of the cause of action, supported by

---

[2] Sikich also argues that Hilco's request for injunctive relief is moot because "Sikich quarantined the documents and engaged a third-party forensic firm to review its system and certify that there were no Hilco documents." (R 17 at 4 n.3.) These facts are not in the complaint, and Sikich does not claim to challenge the Court's jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (R. 1, 16, 17, 32;) *see Lumpkin v. United States*, 791 F. Supp. 747, 749 (N.D. Ill. 1992) ("On a motion to dismiss under Rule 12(b)(1), the court may hold an evidentiary hearing if requested or may organize a documentary inquiry into jurisdiction."). In analyzing the complaint's sufficiency under Rule 12(b)(6), the Court cannot consider the facts supporting Sikich's mootness argument and therefore denies Sikich's request for dismissal on that basis. *See Wilson v. Price*, 624 F.3d 389, 391 n.1 (7th Cir. 2010) (stating the court "only consider[s] those allegations made within the four corners of the complaint" at the Rule 12(b)(6) stage).

mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court may "only consider those allegations made within the four corners of the complaint" or attachments to the complaint. *Wilson v. Price*, 624 F.3d 389, 391 n.1 (7th Cir. 2010); *see also Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.").

## ANALYSIS

### I. MISAPPROPRIATION OF TRADE SECRETS CLAIMS—COUNTS I AND II

The Court first examines the plaintiff's federal claim, which must survive for the Court to exercise supplemental jurisdictions over the plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). The plaintiffs bring two claims of misappropriation of trade secrets: Count I under the federal DTSA, 18 U.S.C. § 1831 *et seq.*, and Count II under the ITSA, 765 ILCS 1065/1 *et seq.* (R. 1 at 28–30.) "Courts often analyze motions to dismiss DTSA and ITSA claims together because 'the pertinent definitions of the two acts overlap.'" *Aon PLC v. Infinite Equity, Inc.*, 19 C. 7504, 2021 WL 4192072, at *12 (N.D. Ill. Sept. 15, 2021) (quoting *PrimeSource Bldg. Prods., Inc. v. Felton*, No. 16 C 11468, 2017 WL 11500971, at *6 n.5 (N.D. Ill. July 6, 2017)). The Court therefore analyzes these two claims together.

To establish a misappropriation of trade secrets claim, a plaintiff must show that "(1) a trade secret existed; (2) the secret was misappropriated through improper acquisition, disclosure, or use; and (3) the owner of the trade secret was damaged by the misappropriation." *Liebert Corp. v. Mazur*, 827 N.E.2d 909, 925 (Ill. App. 2011) (discussing the ITSA); *see also Mickey's Linen v. Fischer*, No. 17 C 2154, 2017 WL

3970593, at *8 & n.1 (N.D. Ill. Sept. 8, 2017) (applying the same elements under the DTSA); *see also Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540–43 (7th Cir. 2021) (applying the DTSA). Sikich argues the complaint insufficiently pleads Counts I and II for four reasons: (1) the documents Sikich used are not trade secrets (R. 17 at 10–13); (2) Sikich did not use, *i.e.* misappropriate, the remaining documents (*id.* at 9); (3) the complaint alleges that only Baiocchi, and not Sikich, misappropriated the plaintiffs' trade secrets (*id.* at 13–14); and (4) the complaint does not allege the misappropriations damaged Hilco (*id.* at 14–15). (*See also* R. 32 at 16.)

### A. Existence of a Trade Secret

Under the first element, that a trade secret existed, the complaint must allege facts showing the information "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." *PrimeSource Bldg. Prods., Inc. v. Huttig Bldg. Prods., Inc.*, No. 16 C 11468, 2017 WL 7795125, at *13 (N.D. Ill. Dec. 9, 2017) (citing 18 U.S.C. § 1839(3); 765 ILCS 1065/2(d)). Sikich argues Hilco failed to allege a trade secret existed because (1) Hilco only alleges the information is confidential, but not a trade secret; and (2) Hilco did not treat the documents as trade secrets because Hilco failed to label them as trade secrets and routinely shared the documents with third parties without restrictions. (R. 32 at 9.)

5

Sikich's first argument is unpersuasive. Sikich points out a heading on page 22 of the complaint that refers to the alleged stolen information as only "Confidential." (R. 17 at 11.) But this ignores other instances throughout the complaint where Hilco refers to the information as trade secrets. (*See, e.g.*, R. 1 at 5, 11, 22, 23, 25.) Sikich further argues that the information in certain documents[3] is "standard in the industry," "easily accessible" elsewhere, or otherwise not sufficiently valuable to be a trade secret. (R. 17 at 12–14.) Even so, "a compilation of data, even if the component parts are in the public domain, may be protectable as a trade secret if it would require substantial time, effort, and expense to recreate the compilation." *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 897 (N.D. Ill. 2019) (citing *Comput. Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1074 (7th Cir. 1992)). Hilco alleges in the complaint that it spent "substantial resources" in developing the alleged trade secret information and explains how it did so. (*See, e.g.*, R. 1 ¶¶ 19–24.) Reading the complaint in a light most favorable to the plaintiff, Hilco pled the existence of trade secrets, not just confidential information.

As for the steps Hilco took to safeguard the information, Hilco alleges in the complaint that it requires employees "to sign agreements that include provisions relating to non-disclosure/non-use/non-transfer of its Confidential and Trade Secret Information," monitors employee use of trade secret information, and "limits access

---

[3] Sikich filed a slew of documents under seal (R. 27) and requested the Court review these documents *in camera* and consider them in deciding Sikich's motion to dismiss. (R. 17 at 11 n.6; R. 22.) For purposes of deciding Sikich's motion, the Court evaluates Sikich's arguments at face value without reviewing the underlying documents. Sikich's motion for *in camera* review of documents is therefore denied as moot.

to its databases containing sensitive, competitively valuable business information to those with a legitimate business reason to access such information." (R. 1 ¶¶ 25–26.) Even accepting Sikich's arguments that the documents are not labeled as trade secrets and that Hilco disclosed them to customers without restriction,[4] the allegations in the complaint are sufficient to allege the existence of a trade secret. "Whether any or all of the information described by [Hilco] actually qualifies as a trade secret, as opposed to confidential . . . information, is a matter to be taken up at a later point." *Zep Inc. v. First Aid Corp.*, No. 09 C 1973, 2010 WL 1195094, at *10 (N.D. Ill. Mar. 19, 2010) (citing *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 683–84 (7th Cir. 2002)). "[O]nly in an extreme case can what is a 'reasonable' precaution be determined [as a matter of law], because the answer depends on a balancing of costs and benefits that will vary from case to case." *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003) (second alteration in original) (quoting *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th Cir. 1991). The protective steps Hilco alleges are not so lacking that the Court must rule at this stage that no trade secret existed.

---

[4] Sikich argues, "according to Hilco's own description of these documents, Hilco shared them with customers with no restrictions," and cites paragraphs 18 and 20–23 of the complaint. (R. 17 at 11.) The complaint does not explicitly state whether Hilco shares the documents without restriction (R. 1 ¶¶ 18, 20–23,) and the Court may not make this inference against the plaintiff. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) ("construing the complaint in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts and drawing reasonable inferences in the plaintiffs' favor").

7

### B. Misappropriation

Under the second element, misappropriation, the complaint must allege that "the secret was misappropriated through improper acquisition, disclosure, or use." *Liebert Corp*, 827 N.E.2d at 925. At the outset, Sikich attempts to limit the universe of actionable documents to "those that Baiocchi actually **used** at Sikich." (R. 17 at 10 (emphasis in original).) But a plain reading of the DTSA belies this argument. The definition of "misappropriation" under the DTSA also encompasses improper acquisition—"acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"—and disclosure—"disclosure or use of a trade secret of another without express or implied consent by a person." 18 U.S.C. § 1839(5)(A)–(B); *see also* 765 ILCS 1065/2(b)(1)–(2) (containing substantially similar language). However, Seventh Circuit case law applying the ITSA contains an added element: "that the defendant actually used the trade secret in its business." *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1071 (N.D. Ill. 2020) (citing *Composite Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992)); *see also Parus Holdings, Inc. v. Banner & Whitcoff, Ltd.*, 585 F. Supp. 2d 995, 1003–05 (N.D. Ill. 2008) (tracing the origin of the "used in the defendant's business" element). The Court analyzes this additional element below.

Sikich argues "the Complaint fails to allege how Sikich, as opposed to Baiocchi, misappropriated anything." (R. 17 at 14.) Under an "acquisition" theory, Hilco must allege that Sikich acquired the trade secrets and "kn[ew] or ha[d] reason to know that

8

the trade secret was acquired" by means of "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(5)(A), (6)(A); *see also* 765 ILCS 1065/2(b)(1), (a). Hilco alleges that Baiocchi sent an email containing some of the alleged trade secrets to Stevens at Stevens' work email address. (R. 1 ¶ 62). Hilco also alleges Baiocchi sent Stevens a text message containing trade secret information and that Baiocchi explained, "I wasn't going to email this [laughing emoji]." (*Id.* ¶¶ 63–64.) According to Hilco, Baiocchi continued sending Hilco's trade secrets to Stevens from Baiocchi's personal email account after Baiocchi began working for Sikich. (*Id.* ¶¶ 69–75.) Taking these allegations together, Hilco sufficiently alleges that Sikich acquired Hilco's trade secrets through its employee Stevens, and that, through Stevens, Sikich knew that Baiocchi had obtained the trade secrets by breaching his duty to Hilco to maintain secrecy.

### C. Damage

Sikich argues the complaint does not sufficiently plead that the alleged misappropriation damaged Hilco; rather, according to Sikich, the complaint contains only conclusory allegations of harm. (R. 17 at 15–16.) Hilco alleges that it suffered "actual misappropriation of Hilco's trade secrets, injury and harm to its goodwill, business reputation, and competitive position, and the loss and expenditure of significant legal and other fees and expenses to conduct its investigation and remediate harm." (R. 1 ¶¶ 97, 105.) Such allegations are sufficient in misappropriation of trade secrets cases to plead damage. *Cf. Philips Med. Sys.*

9

*(Cleveland), Inc. v. Buan*, No. 19 C 2648, 2023 WL 143200, at \*6 (N.D. Ill. Jan. 10, 2023) (finding injury based on plaintiff pleading harm to "business advantage, value, and goodwill" earned through "'development and lawful exploitation' of the trade secrets," and collecting cases).

### D. Use in the Defendant's Business Under the ITSA

Finally, the Court examines whether Hilco alleges in the complaint "that the defendant actually used the trade secret in its business." *Packaging Corp. of Am., Inc.*, 419 F. Supp. 3d at 1071. Hilco alleges in the complaint that Baiocchi sent Stevens Hilco's trade secrets and remarked, "gives a good range of what to charge each client," and that this "indicat[ed] that Sikich could use this stolen confidential information to compete against [Hilco]." (R. 1 ¶ 65.) Hilco further alleges that Stevens replied, "Me, you, and Tony will chat at the retreat. A couple of these places are still waiting on adding vendors but planning on reaching out again when you're onboarded as I think it shows that we're continuing to invest/grow the business. We'll get there." (*Id.* ¶ 66.) Hilco also alleges that Baiocchi, while working at Sikich, "created variants of the [trade secrets] and used the same with his team to provide Sikich with an unfair competitive advantage." (*Id.* ¶ 77.)

Viewing these allegations in a light most favorable to Hilco, it is reasonable to infer that Stevens, and possibly other Sikich employees, planned to use Hilco's trade secrets in Sikich's business. It is also reasonable to infer that they did so, and that this conduct extended to other trade secrets Baiocchi also transmitted to Stevens. Though Sikich represents that its use of Hilco's trade secrets was far more limited

(R. 17 at 9), this information is not gleaned from the complaint, and the Court cannot consider it at the motion to dismiss stage.

Accordingly, Sikich's motion to dismiss is denied with respect to Counts I and II.

### II. TORTIOUS INTERFERENCE CLAIMS—COUNTS III AND IV

Moving to Hilco's other claims under Illinois state law, Hilco alleges two counts of tortious interference with contract against Sikich—one regarding Hilco's non-competition agreement with Baiocchi (Count III), and the other regarding the same agreement with Stevens (Count IV). (R. 1 at 31–32.) "To state a claim for tortious interference with contract, [Hilco] must allege enough facts to establish: '(1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages.'" *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 834 (N.D. Ill. 2019) (quoting *Webb v. Frawley*, 906 F.3d 569, 577 (7th Cir. 2018)). Sikich makes three arguments for dismissing Counts III and IV.

First, Sikich argues that the non-competition agreements are invalid as a matter of law. (R. 17 at 6–17.) Sikich relies mainly on *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694 (N.D. Ill. 2014). (R. 17 at 6–7.) In *Montel*, another court in this district dismissed a breach of contract claim and a tortious interference claim because the underlying non-competition agreement "barred [the defendant] from working for any competitor, even if she was employed in a noncompetitive capacity[,]

11

. . . coupled with the almost limitless geographic scope of the clause." *Montel Aetnastak, Inc.*, 998 F. Supp. 2d at 718–19. Such is not the case here, as the non-competition agreements at issue are not "blanket ban noncompete[s]" as Sikich describes. (*See* R. 32 at 5.) The agreements are attached to the complaint and contain the same relevant language. (*See* R. 1-1; R. 1-2 ("Agreements").) In each agreement, Section 7, contains the non-competition provision prohibiting the employee from performing certain enumerated services "during the Restricted Period" and "in the Territory." (*Id.* § 7(a)–(c).) This prohibition applies to services performed for certain enumerated competitors as well as "any competitor . . . in the Territory," or to "any Customers in the Territory." (*Id.* § 7(a)–(c).) The "Restricted Period" is "the period of Employee's employment with HILCO and with any Affiliate plus 12 months immediately following the end of the Active Tenure," and the "Territory" is "the geographic territories or regions for which Employee, formally or informally, had executive, managerial, supervisory, sales, marketing, research, product development, engineering, human resources, information technology, finance, consulting, business-planning, strategic, customer-related, and/or other responsibilities at any time during the Lookback Period." (*Id.* § 5(f)–(g).)

On its face, this agreement appears narrower than the one described in *Montel*. It contains ascertainable limits based on job duties, geography, and time. *See Mazzetta Co., LLC v. Simpson*, No. 24 C 2488, 2025 WL 777534, at *5 (N.D. Ill. Mar. 11, 2025) (denying dismissal where "the non-compete applies only to jobs that involve the same or substantially similar job duties, is limited to twenty-one specific

jurisdictions where [the plaintiff] alleges that it did business . . . , and lasts for only twelve months."). At the very least, the non-competition agreements are not "facially invalid, and would instead require the [C]ourt to conduct a fact-specific analysis to determine reasonableness, [meaning] a motion to dismiss must be denied so that the parties can have an opportunity to develop the necessary evidentiary record." *Id.* at *4. Accordingly, the Court will not conclude at this stage that the non-competition agreement is invalid.

Second, Sikich argues that Baiocchi and Stevens could not have breached the non-competition agreements because Sikich and Hilco are not competitors; Section 7(b) of the agreements, listing Hilco's major competitors, does not list Sikich. (R. 17 at 7–8; R. 32 at 6.) This argument is unpersuasive. As stated above, the non-competition agreements prohibit employees from working for certain enumerated competitors as well as "any competitor . . . in the Territory." (Agreements § 7(a).) Just because Sikich is not specifically listed in Section 7(b) does not foreclose it being a competitor under Section 7(a), which is the more general provision. (*See id.*) Furthermore, Hilco alleges that Hilco "and Sikich are direct competitors, each providing deal-specific financial and accounting diligence services for commercial lenders." (R. 1 ¶ 2.) It is therefore reasonable to infer that Sikich is a competitor under Hilco's non-competition agreements.

Sikich's final argument is that the complaint does not sufficiently allege Sikich acted improperly to induce the alleged breaches.[5] (R. 17 at 4–9.) This element

---

[5] As part of this argument, Sikich cites *PetroChoice LLC v. Amherdt*, No. 22 C 2347, 2023 WL 2139207, at *6, *7 n.5 (N.D. Ill. Feb. 21, 2023), for the proposition that the law recognizes

13

"requires some active persuasion, encouragement, or inciting that goes beyond merely providing information in a passive way." *Webb*, 906 F.3d at 579 (quoting *In re Est. of Albergo*, 656 N.E.2d 97, 103 (Ill. App. 1995)). "A plaintiff cannot simply plead that a defendant 'created a condition' that opened the door for the breach. *See Brinley Holdings Inc. v. RSH Aviation, Inc.*, 580 F. Supp. 3d 520, 543 (N.D. Ill. 2022). A plaintiff must plead that a defendant intended to induce non-performance by the third party." *Nat'l Experiential, LLC v. City of Chicago*, No. 21 C 810, 2024 WL 3757066, at *31 (N.D. Ill. Aug. 9, 2024).

The allegations in the complaint related to Count III, the tortious interference claim regarding Baiocchi, are sufficient. Hilco alleges in the complaint that Stevens, Baiocchi's former manager, sent Baiocchi an email inviting him to have cigars with several Sikich employees. (R. 1 ¶¶ 51, 53.) The complaint further alleges that Baiocchi attended this meeting, and that Stevens emailed Baiocchi a job application the next day. (*Id.* at ¶ 54.) It is reasonable to infer that Sikich representatives met with Baiocchi and induced him to breach his contract with Hilco to instead join Sikich.

As for Count IV, the tortious interference claim regarding Stevens, the complaint is insufficient. The complaint merely alleges that Stevens left Hilco for a similar position, that doing so constituted a breach of Stevens' employment agreement, that Sikich leaders were aware of Stevens' contractual obligations to

---

"the employee's right to make use of general knowledge and skills acquired through experience in pursuing the occupation for which he is best suited." *Id.* at *6; (R. 17 at 8–9.) The court in *PetroChoice* made this statement to support the conclusion that general "sales skills" are not trade secrets; it did not use the same or similar reasoning in its analysis of the intentional interference with contract claims raised in that case. *PetroChoice, LLC*, 2023 WL 2139207, at *6–7.

14

Hilco, and that "[i]n recruiting, extending an offer of employment to, and/or hiring Stevens, Sikich deliberately and tortiously interfered with Hilco's contractual relationship with Stevens and induced him to breach the Stevens Restrictive Covenants." (*Id.* at ¶¶47–52.) "But, nothing in the complaint alleges that [Sikich] was involved in [Stevens'] decision to" break his contract with Hilco, "much less that [Sikich] was an active participant in that decision-making process." *Webb*, 906 F.3d at 580. The complaint contains only "[t]hreadbare recitals of the elements of the cause of action." *Iqbal*, 556 U.S. at 678. Accordingly, Count IV is dismissed without prejudice.

## CONCLUSION

The defendant's motion to dismiss [16] is granted as to Count IV. The motion is denied in all other respects. The defendant's motion for *in camera* review of documents [22] is denied as moot. The plaintiff's request for leave to amend is granted. The plaintiff shall file any amendment with respect to Count IV by June 3, 2025, and the defendant shall answer the operative complaint on or before June 24, 2025.

Date: May 21, 2025

JEREMY C. DANIEL
United States District Judge